UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| MATTHEW KING, | ) |
|---|---|
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:15-CV-245 JD ) |
| INDIANA HARBOR BELT RAILROAD COMPANY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Matthew King filed his amended complaint under the Federal Railroad Safety Act, 49 U.S.C. § 20109, *et seq.*, alleging that his employer and defendant herein Indiana Harbor Belt Railroad ("IHB") retaliated against him for engaging in various protected activities. [DE 29] IHB has moved for summary judgment [DE 55] and the matter is ripe for review.[1] For the following reasons, the Court will stay the case.

## RELEVANT FACTS

Matthew King works for the Indiana Harbor Belt Railroad Company, which runs tracks in and around Chicago, Illinois, and Northwest Indiana. On March 12, 2014, King filed a Chapter 13 bankruptcy petition in the Northern District of Indiana, Bankr. Case No. 14-20664.[2] Included among King's personal property listed in Schedule B, next to the item labeled "[o]ther contingent and unliquidated claims of every nature," was the following disclosure: "Debtor has a

---

[1] Also outstanding are two motions to strike, filed by IHB. [DE 67; 68]

[2] King also filed an earlier Chapter 13 bankruptcy petition in the Northern District of Indiana, Case No. 13-22308, in June 2013. At the creditors' meeting in that case, King was told that a then-active federal lawsuit he had against IHB (unrelated to the present case) was part of the bankruptcy estate. After the meeting, King moved to dismiss his bankruptcy. The bankruptcy court then dismissed King's Chapter 13 action in time for him to finalize a settlement agreement in his federal lawsuit.

1

lawsuit for a whistleblower case. He is being represented by Attorney Charlie Collins. His phone number is 612-875-3033." [Case No. 14-20664, DE 1 at 10] But on April 7, 2014, King attended a creditors' meeting and was asked, point blank, "Do you have any claims or lawsuits, Mr. King, where you're seeking to recover money from anyone?" [DE 57-27 at 11:15-17] King unequivocally denied having any such claims. *Id.* at 11:18. Three years later, King received a discharge on June 5, 2017, and the bankruptcy case closed on September 12, 2017.

King filed the instant lawsuit in June 2015 and then submitted the operative amended complaint a year later. [DE 29] King's lawsuit does not include just one retaliation claim, but a series of claims that accrued over the course of about two years, which can be divided into three sets. King's first set of claims stems from his involvement in a railcar collision, and in an unrelated accident that injured his coworker, Corey Henman. Both episodes occurred in the fall of 2013. [DE 29 ¶¶ 9-20] These claims are reflected in King's April 7, 2014, administrative complaint. [DE 57-15][3] His second set of claims accrued after he filed his April 2014 administrative complaint, and include various alleged instances of retaliation and workplace harassment that occurred in the summer of 2014. [DE 29 ¶¶ 21-24] King amended his April 2014 administrative complaint to reflect these legal claims on August 4, 2014. [DE 32-7] His third set of claims allege harassment related to a safety violation in mid-August 2014 and to his role in serving as a witness in Henman's post-accident lawsuit against IHB. [DE 29 ¶¶ 11, 25].

King's second and third sets of legal claims accrued *after* he filed his Chapter 13 bankruptcy petition on March 12, 2014, and the Court collectively refers to them as his "post-

---

[3] King's April 2014 administrative complaint also included allegations of workplace harassment that occurred when he returned to work from a suspension.

petition claims." Importantly, during the life of his bankruptcy action, King never amended his schedules to disclose these post-petition claims.[4]

## DISCUSSION

Apart from its time bar and merits arguments [DE 58 at 5-20], IHB maintains that the Court should enter summary judgment against King for two related reasons: first, King should be judicially estopped from prosecuting this lawsuit because he did not disclose it as an asset in his bankruptcy action; and second, that King lacks standing to bring this case for his own benefit. King responds that he properly disclosed the instant legal claims on his bankruptcy petition and that the trustee abandoned that asset, leaving him as the sole party in interest here.

At the time a debtor files a bankruptcy petition, the debtor's property, by operation of law, becomes part of the bankruptcy estate whether properly disclosed or not. 11 U.S.C. § 541(a); *see also In re Enyedi*, 371 B.R. 327, 334 (Bankr. N.D. Ill. 2007) (citing *Parker v. Wendy's Intl., Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) ("Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate.")). The debtor's property, and thus the bankruptcy estate, includes any legal claims that may be prosecuted for the benefit of the estate. *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472-73 (7th Cir. 1999) (overruled on other grounds). The bankruptcy estate continues to pull in any assets (such as new legal claims) acquired by the debtor after the commencement of the bankruptcy case, but before the case is closed, dismissed, or converted, whichever occurs first. 11 U.S.C. §§ 541(a)(7), 1306(a)(1).

---

[4] In addition, King apparently never amended his schedules to reflect an independent Federal Employers Liability Act claim and the related $20,000 settlement he received in July 2015, while his bankruptcy case was still open. [DE 56 ¶ 68; 57-23] King did not respond or object to this fact in his Statement of Genuine Disputes [DE 60]; he completely skipped over it. *Id.* at 25.

Property of the estate that is not abandoned or administered in the case remains property of the estate. 11 U.S.C. § 554(d).

Here, King's bankruptcy estate included any legal claims he acquired against IHB before and during his bankruptcy case filed on March 12, 2014. That includes all three sets of legal claims raised in this lawsuit. 11 U.S.C. § 1306(a)(1). But while the parties hotly contest whether King disclosed his first set of legal claims in his bankruptcy schedules, the Court need not address them here, because there is no dispute that he never disclosed his *post*-petition claims. King's March 2014 petition included a reference to "a lawsuit for a whistleblower case," but that listing could not possibly have referred to his post-petition legal claims, because those claims did not yet exist. Collectively, they did not begin to accrue until the summer of 2014, at the earliest. In addition, King never amended his schedules to reflect these new legal claims, despite his duty to do so. *In re Wheeler*, 503 B.R. 694, 696 (Bankr. N.D. Ind. 2013) ("[C]hapter 13 debtors, in particular, have an ongoing obligation to provide the trustee with information concerning their income and expenses until the case is closed."); *see also Jaeger v. Clear Wing Prods., Inc.*, 465 F. Supp. 2d 879, 882 (S.D. Ill. 2006) ("The caselaw plainly holds that a debtor must amend his pleadings whenever circumstances change."). This duty applies to legal claims that the debtor acquires while the bankruptcy case is pending. *Cowling v. Rolls Royce Corp.*, No. 1:11-cv-01719, 2012 WL 4762143, *3 (S.D. Ind. Oct. 5, 2012) (citing *Rainey v. UPS, Inc.*, 466 F. App'x 542 (7th Cir. 2012)).

Since King never disclosed his post-petition legal claims against IHB by filing an amended schedule of his personal property, the trustee did not have the opportunity to abandon or administer that portion of the estate consisting of King's claims before the case closed. 11 U.S.C. § 554; *see also In re Prochnow*, 474 B.R. 607, 615 (Bankr. C.D. Ill. 2011) (citing *In re*

*Enyedi*, 371 B.R. at 334). Because King's claims were not abandoned or administered in his bankruptcy case, King's claims remain property of the estate. 11 U.S.C. § 554(d).

A Chapter 13 debtor, like King, has standing to bring a claim in his own name for the benefit of the bankruptcy estate, but not for his own personal benefit. *Cable*, 200 F.3d at 472-73 (relying on Fed. R. Bankr. P. 6009); *In re Heath*, 115 F.3d 521, 523-24 (7th Cir. 1997). Where, as here, a Chapter 13 debtor has not disclosed legal claims in his bankruptcy proceeding, he cannot claim to be bringing them for the benefit of his estate. *Cowling*, 2012 WL 4762143, *4; see also Becker v. Verizon North, Inc.*, 2007 WL 1224039 (7th Cir. Apr. 25, 2007) (debtor lacked standing to pursue lawsuit where she failed to disclose it in her Chapter 13 bankruptcy); *Tucker*, 2011 WL 4479112 (where debtor failed to disclose discrimination claims that existed at time she filed for bankruptcy, court held she was not bringing discrimination claims on behalf of the state and lacked standing to pursue her discrimination lawsuit at the time it was filed); *Calvin v. Potter*, 2009 WL 2588884 (N.D. Ill. 2009) ("[plaintiff's] active misrepresentation in her bankruptcy proceedings [by failing to disclose discrimination claims] demonstrates that she is *not* bringing her discrimination claims *on behalf of or for the benefit of* her bankruptcy estate") (emphasis in original). The same is particularly true when the bankruptcy case has closed, since any proceeds of the lawsuit would not be distributed among the debtor's creditors. *See* 11 U.S.C. § 350(a) (explaining that the court closes the bankruptcy case after the estate is fully administered and the court has discharged the trustee).

A debtor cannot pursue claims on behalf of his bankruptcy estate once his case is closed, so to bring a claim for the benefit of the estate at this point, King must ask the bankruptcy court to reopen his case in order to amend his schedules and allow the trustee to either administer or abandon its interest in this litigation. 11 U.S.C. § 350(b) (stating that the bankruptcy court may

5

reopen a case to administer assets, accord relief to the debtor, or for other cause); *see also Rainey*, 466 F. App'x at 544. Once the bankruptcy proceedings have been revived, "a Chapter 13 debtor can inform the trustee of previously undisclosed legal claims, and unless the trustee elects to abandon that property, the debtor may litigate the claims on behalf of the estate and for the benefit of the creditors without court approval." *Rainey*, 466 Fed. App'x at 544. When faced with the same issues presented in this case, some courts have opted to rule outright and dismiss a lawsuit for lack of standing. The district court in *Rainey* made such a ruling, but its decision was then vacated and the case remanded in light of plaintiff's subsequent (and successful) efforts to reopen his bankruptcy case and amend his schedules. *See generally, id.* Therefore, before reaching a final adjudication on the instant matter the Court believes that it is appropriate to stay this case pending a determination as to whether King's bankruptcy case will be reopened. However, should the case remained closed, King's post-petition claims will be dismissed for lack of standing.[5] And indeed King's first set of legal claims may suffer the same fate if the Court determines at a later point in this litigation that he similarly failed to disclose them.

## CONCLUSION

As the case currently stands, King lacks standing to pursue, at the very least, his post-petition claims arising from the alleged workplace harassment in the summer of 2014, the safety violation that followed, and his role as a witness in Henman's lawsuit against IHB. But the Court

---

[5] While the Court does not address the issue of judicial estoppel here, it cautions King that, should the trustee decide to abandon its interest in the present legal claims, King may still be estopped from pursuing them based on his nondisclosure. *See Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006) ("A debtor in bankruptcy who receives a discharge (and thus a personal financial benefit) by representing that he has no valuable choses in action cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim.").

recognizes that both the trustee[6] and King may seek to reopen the bankruptcy case to allow for the disclosure and administration of these claims as assets. Therefore, the Court hereby **STAYS** the instant case for sixty (60) days, during which King may move to reopen his bankruptcy case, No. 14-20664, in order to amend his schedules to reflect the instant legal claims. The Court also **DIRECTS** the Clerk to distribute a copy of this Order to the trustee in that case, Paul R. Chael, at 401 West 84th Drive, Suite C, Merrillville, Indiana 46410. Plaintiff King and Defendant IHB shall file a joint status report with this Court within 60 days of this Order that reports on the status of King's bankruptcy case.

SO ORDERED.

ENTERED: March 30, 2018

    /s/ JON E. DEGUILIO
Judge
United States District Court

---

[6] The trustee is a "party in interest" such that it can move to reopen a bankruptcy case. *White v. Boston*, 104 B.R. 951, 954-55 (S.D. Ind. 1989).